# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MERCEDES CALLE,<br><br>Plaintiff,<br><br>v.<br><br>FROEDTERT HEALTH and FROEDTERT MEMORIAL LUTHERAN HOSPITAL, INC.,<br><br>Defendants. | Case No. 26-CV-1044-JPS<br><br>**ORDER** |

## 1. INTRODUCTION[1]

On June 11, 2026, Plaintiff Mercedes Calle ("Plaintiff"), proceeding pro se, filed this action against Defendants Froedtert Health ("FH") and Froedtert Memorial Lutheran Hospital, Inc. ("FMLH") (collectively, "Froedtert"). She alleges Froedtert discriminated against her on the basis of her sex and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 1. Separately, she brings claims against Froedtert for race discrimination and retaliation in violation of 42 U.S.C. § 1981. *Id*. Finally, she sues Froedtert for race discrimination in violation of Title VII. *Id*. This Order screens Plaintiff's complaint. It also addresses her motion to restrict. ECF No. 3. For the reasons set forth below, the Court will allow Plaintiff to proceed on all her claims and deny her motion to restrict.

[1]The Court notes that, before filing this case, Plaintiff brought an action against CareRev. *Mercedes Calle v. CareRev*. Case No. 26-CV-882-JPS (E.D. Wis. May 18, 2026) ("*CareRev* Case").

## 2. SCREENING THE COMPLAINT

### 2.1 Legal Standard

Notwithstanding the payment of any filing fee, the Court may screen a complaint and dismiss it or any portion thereof if it raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense. This is so even when the plaintiff has paid all fees for filing and service . . . ."); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) ("[D]istrict courts have the power to screen complaints filed by all litigants . . . regardless of fee status."). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This rule "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States, ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

The complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (internal bracketing omitted).

### 2.2 Factual Allegations

Plaintiff began working for CareRev in September 2020 as a Nursing Assistant and was assigned to work at Froedtert Hospital on 900 N. 92nd St., Milwaukee, WI 53226. ECF No. 1 at 3. Froedtert used CareRev workers, *see supra* note 1, to staff hospital units there; Froedtert's harassment policies applied to contractors and other workers, not only direct employees, on Froedtert premises. *Id*. at 4. Plaintiff was subjected to repeated harassment and intimidation by a male CareRev worker who she identifies as Brandon Robinson, a Registered Nurse. *Id*. at 5.

On or about December 30, 2023, while working on unit 5NE at Froedtert's Main Campus in Wauwatosa, Wisconsin, Robinson rubbed his groin against Plaintiff's buttocks while walking behind Plaintiff in a patient's room with the door closed and made a statement along the lines

of "you like working here." *Id*. at 5. On March 2, 2024, Robinson sent Plaintiff a nude photograph while both were working. *Id*. at 7. During that same shift, Robinson neglected patient call lights, remained on his phone during portions of the shift, and otherwise made an uncomfortable work environment for Plaintiff. *Id*. Later that same shift, Robinson contacted Plaintiff through Vocera (presumably a telecommunications device used to communicate with other staff) while Plaintiff was with a patient to tell her to turn off the lights to the patient's room; Robinson subsequently came into the patient's room to tell Plaintiff that: "it's beneath me to turn off the lights." *Id*. at 8. Robinson, later that day, approached Plaintiff in front of a co-worker and grabbed Plaintiff's arm aggressively, telling Plaintiff "to not antagonize his character." *Id*.

On March 3, 2024, Plaintiff called CareRev to report a hostile work environment. *Id*. at 9. On March 4, 2024, CareRev emailed Plaintiff to confirm receipt of the complaint and ask whether the complaint could be shared with Froedtert Hospital. *Id*. On March 6, 2024, Plaintiff reported the sexual harassment involving Robinson by phone to CareRev. *Id*. The next day, CareRev followed up with Plaintiff by email and informed Plaintiff that Froedtert would be notified of the conduct. *Id*. Plaintiff was informed (by a source she does not identify, but presumably CareRev) that her complaint would be investigated. *Id*. CareRev did not provide a meaningful update during the following week. *Id*. On March 12, 2024, Robinson encountered Plaintiff at the Patio Café while working at Froedtert, where he waited for her in the food line, grabbed her arm aggressively, and asked: "are we good?" *Id*. Plaintiff pulled her arm away, told Robinson to leave her alone, and returned to the report room on unit 4SW. *Id*. at 10.

Once she returned to that room, a co-worker noticed something was wrong, inquired whether it was because of Robinson, and instructed Plaintiff to call a supervisor. *Id*. Because Plaintiff did not have a working Vocera with her, the co-worker called the Froedtert Nursing Supervisor ("FNS"). *Id*. Plaintiff explained over the phone to the FNS what happened on December 30, 2023 and March 2, 2024, and during the Patio Café incident. *Id*. The FNS then came down in person to talk with Plaintiff to gather more information. *Id*. at 11. Plaintiff was visibly and audibly distressed during that conversation; Plaintiff informed the FNS she would like to press charges, but the FNS told Plaintiff not to do that as Froedtert would "look into Robinson" and that the matter would be handled internally. *Id*. The FNS indicated that Plaintiff would not be on the same floor as Robinson; at that time, the FNS offered Plaintiff therapy, as well as for security to walk Plaintiff to her car. *Id*. at 12. On March 13, 2024, CareRev notified Plaintiff that an investigation would be opened regarding her complaints as to Robinson. *Id*. She cooperated with that investigation, providing footage and other information as requested. *Id*.

On April 2, 2024, Plaintiff was notified by CareRev that "the investigation was concluded in partnership with Froedtert," as there was inconclusive evidence to support Plaintiff's complaints. *Id*. at 13. Plaintiff learned that Froedtert was unable to make adjustments to prevent contact with specific workers. *Id*. On April 22, 2024, Plaintiff received an email from CareRev stating that Froedtert informed CareRev that Plaintiff had been calling units to ask whether Robinson was working before picking up shifts and/or requesting that Robinson not be there. *Id*. CareRev notified Plaintiff that Froedtert would not accommodate her request, leaving open the possibility the two would work together. *Id*.

On April 29, 2024, Plaintiff received a text message from a co-worker indicating that the co-worker had been contacted and questioned as part of a reinvestigation; during that conversation, the co-worker advised CareRev of Robinson's reputation and the run-in she too had with him in which he touched her breast. *Id*. at 14. Plaintiff had requested that reinvestigation because she did not believe the first one was adequate, as it left out relevant witnesses. *Id*. On May 23, 2024, Plaintiff contacted Froedtert Compliance by phone. *Id*. at 15. Twelve days passed without any follow-up phone call, as Plaintiff had anticipated. *Id*. On May 31, 2024, Plaintiff filed a complaint with the Equal Employer Opportunity Commission. *Id*. On June 4, 2024, Plaintiff emailed Froedtert Compliance to follow up on the May 23rd phone call. *Id*. That same day, Plaintiff received a text message from a colleague informing Plaintiff that Robinson had been promoted to charge nurse and was in charge of the entire unit. *Id*. The next day, Froedtert Compliance followed up with Plaintiff and informed her that her complaint had been forwarded to Froedtert Human Resources. *Id*. at 16. On June 6, 2024, Plaintiff gave Froedtert additional notice via email regarding the inappropriate conduct in the workplace. *Id*. On June 11, 2024, Froedtert Compliance emailed Plaintiff that her concerns had been investigated and noted that Plaintiff had received a follow-up response from CareRev. *Id*.

On June 27, 2024, Plaintiff spoke with a supervisor in the oncology department regarding Robinson. After having a patient complaint regarding Robinson and hearing Plaintiff' story, that supervisor reported to Plaintiff that she did not want Robinson back in the unit and suggested that Plaintiff file a complaint with the Wisconsin State Board of Nursing. *Id*. at 18. On July 2, 2024, Plaintiff did so, reporting Robinson's sexual harassment and the hostile work environment. *Id*. at 19. On July 7, 2024, Plaintiff spoke

with a Froedtert charge nurse and learned that, by way of comparison, after a white, male nursing assistant's report was sent to Froedtert and CareRev, the accused CareRev nurse did not return. *Id*. Robinson found out about the investigation by the Wisconsin State Board of Nursing and subsequently contacted her co-workers. *Id*. at 20. Then, on July 24, 2024, Plaintiff was placed on "do not return" status. *Id*. at 21.

### 2.3 Law and Analysis

The screening standard in employment discrimination cases, and in civil cases generally, is lenient for pro se plaintiffs: "a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) and *Tamayo*, 526 F.3d at 1084). "Normally, discrimination and retaliation claims are analyzed separately." *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 261 (7th Cir. 2014).

The Court begins by addressing her Title VII claims: her sexual discrimination claim, her retaliation claim, and her race discrimination claim. It then addresses her race discrimination and retaliation claims under 42 U.S.C. § 1981.

#### 2.3.1 Sexual Discrimination under Title VII

"Hostile or abusive work environments are forms of sex discrimination actionable under Title VII of the Civil Rights Act of 1964." *Paschall v. Tube Processing Corp*., 28 F.4th 805, 812 (7th Cir. 2022) (quoting *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008)). "To establish a claim of hostile work environment based on sex, a plaintiff 'must establish that 'she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a

hostile work environment; and (4) that there is a basis for employer liability.'" *Id*. (quoting same). "These elements are evaluated in light of the 'particular facts and circumstances' of the case." *Id*. (quoting same).

Here, the first three elements are adequately alleged to survive screening. After all, Robinson is said to have repeatedly engaged in inappropriate sexual conduct toward Plaintiff for several months that resulted in Plaintiff asking to be reassigned and, ultimately, being placed on DNR status. To decide whether Froedtert bears liability, the Court must ask "whether the harasser is the victim's supervisor or co-employee." *Id*. (citing *Parkins v. Civ. Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). "When a supervisor is the harasser, the employer is strictly liable for his or her conduct, subject to any affirmative defenses that may preclude its liability." *Id*. (quoting *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004)). Plaintiff alleges that Robinson was promoted and was, therefore, in charge of the whole unit. Based on such allegations, therefore, it appears that Froedtert may be subject to (strict) liability, assuming that FH and FMLH can be characterized as her employers.

Even if Robinson was not her supervisor and only a co-employee, Froedtert may still be responsible to the extent that it was "negligent either in discovering or remedying the harassment." *Parkins*, 163 F.3d at 1027 (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) and citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995)). But again, this claim's viability depends on whether FH and FMLH can be characterized as her employers. For now, Plaintiff has made sufficient allegations at screening to proceed on this claim.

### 2.3.2 Retaliation under Title VII

With respect to retaliation, a Title VII plaintiff "must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity." *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 536 (7th Cir. 2016) (citing *Burlington N. and Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). Reporting unlawful sexual harassment is a statutorily protected activity. *Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) (citing *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 770–72 (7th Cir. 2008)). Material adverse actions "include: (1) diminishing an 'employee's compensation, fringe benefits, or other financial terms of employment,' including termination; (2) reducing long-term career prospects 'by preventing h[er] from using the skills in which [s]he is trained and experienced, so that the skills are likely to atrophy and h[er] career is likely to be stunted'; and (3) changing 'the conditions in which [an employee] works . . . in a way that subjects h[er] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment.'" *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2022) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)).

Here, Plaintiff alleges that she notified Froedtert, at several different points in several different ways, that she was being sexual harassed—a kind of reporting that is a statutorily protected activity. *Kuntzman v. Wal-Mart, Inc.*, 673 F. Supp. 2d 690, 715 (N.D. Ind. 2009) (citing *Rizzo v. Sheahan*, 266 F.3d 705, 715 (7th Cir. 2001) and *E.E.O.C. v. V.J. Foods, Inc.*, 507 F.3d 575, 580 (7th Cir. 2007)). By July 2024, Plaintiff was placed on DNR status, which inferably means that she experienced diminished financial compensation; at least for screening purposes, this is sufficient to show a material adverse

action. Thus, this claim survives screening, subject to a finding that FH and FMLH can be characterized as Plaintiff's employers.

#### 2.3.3 Race Discrimination under Title VII

Title VII "protects people of all races from race discrimination." *Paterakos v. City of Chicago*, 147 F.4th 787, 795 (7th Cir. 2025) (citing *Runkel v. City of Springfield*, 51 F.4th 736, 742 (7th Cir. 2022)); 42 U.S.C. § 2000e-2(a)(1). To advance such a claim, a plaintiff must allege that her race caused an adverse employment action. *Id*. (citing *Ortiz v. Werner Enter., Inc*., 834 F.3d 760, 765 (7th Cir. 2016)). Here, Plaintiff alleges that her race contributed to the lack of an adequate investigation, or at least, an investigation inferior to that her white colleagues received after they reported similar misconduct. There is also an allegation Plaintiff was later placed on DNR status. *See supra* Section 2.3.2 (noting that this can satisfy the adverse action requirement for screening purposes). Under the circumstances, one can make an inference that her race contributed to her employer's decision to place her on DNR status, or at least, such allegations are sufficient to survive screening. As such, Plaintiff can proceed on this claim, subject to a finding that FH and FMLH can be characterized as Plaintiff's employers.

#### 2.3.4 Race Discrimination under 42 U.S.C. 1981

"To state a claim under § 1981, [a plaintiff] must plead (1) she is a 'member[ ] of a racial minority;' (2) [the defendant] intended to discriminate against her based on race; and (3) the discrimination concerned activities listed in the statute, including 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits . . . of the contractual relationship.'" *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 951 (N.D. Ill 2013) (quoting *Morris v. Office Max, Inc*., 89 F.3d 411, 413 (7th Cir. 1996) and citing 42 U.S.C. § 1981)).

Here, Plaintiff alleges that she is an African-American female, ECF No. 1 at 1, satisfying the first element. *Wilborn v. Kraft Foods Grp., Inc.*, 71 F. Supp. 3d 927, 935 (W.D. Wis. 2014). Froedtert's alleged failure to provide the same level of investigation that her white counterparts received when they reported sexual harassment leaves the inference that there was intentional discrimination. *See Vega*, 958 F. Supp. 2d at 951; ECF No. 1 at 19 (alleging that, after a white nursing assistant who made a report of sexual harassment, the accused CareRev nurse did not return). The Court is satisfied, for screening purposes, that Froedtert's failure to investigate those reports—or rather, to do so to the same extent as her white counterparts' reports—affected Plaintiff's enjoyment of the benefits of the contractual relationship. Thus, Plaintiff has made sufficient allegations at screening to proceed on this claim, subject to a finding that FH and FMLH can be characterized as Plaintiff's employers.

#### 2.3.5 Retaliation under 42 U.S.C. § 1981

The Supreme Court has held that "42 U.S.C. § 1981 encompasses claims of retaliation." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). To survive screening, Plaintiff must plead "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). The Seventh Circuit applies the same pleading standard to these claims as it does to retaliation claims under Title VII. *See id*.

As the Court has found that Plaintiff may advance a Title VII retaliation claim, *supra* Section 2.3.2, the Court sees no reason that Plaintiff cannot also advance a § 1981 retaliation claim. That is, the Court will allow Plaintiff to proceed on this claim as well, subject to a finding that FH and FMLH can be characterized as Plaintiff's employers.

**3. MOTION TO RESTRICT**

Plaintiff moves to restrict any documents containing her actual home address (and other personal information) given her participation in Wisconsin's Safe at Home Address Confidentiality Program, which is designed to protect victims of sexual abuse and stalking. ECF No. 4. General Local Rule 79(d)(2) (E.D. Wis.) requires that a party publicly file a motion to seal or restrict and attach a version of the document the party wants sealed, redacting those portions of the document that are subject to the request; Rule 79(d)(3) requires that any motion to restrict access or seal be supported by sufficient facts demonstrating good cause for withholding the document or material from the public record. "General Local Rule 79 exists because the Seventh Circuit requires good cause to seal or restrict a document," as there is a presumption that documents that influence a judicial ruling should be public. *Jones v. Progressive Universal Ins. Co.*, No. 22-cv-364-pp, 2024 WL 836810, at *2 (E.D. Wis. Feb. 28, 2024) (quoting *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013)).

Here, while the Court certainly appreciates Plaintiff's privacy and safety concerns, she has not demonstrated good cause to restrict this information under the record before the Court. For one, her right-to-sue letter, ECF No. 1-1, contains her actual address and has been public since this litigation began. More to the point, she has several state court cases[2] from the last few years in which her personal information, including her actual address (or at least the same address as in the right-to-sue letter), is open to public view. *See, e.g.*, *City of Milwaukee v. Mercedes Calle*, Case No.

[2]This Court has no control over what materials state courts decide to restrict or seal, so Plaintiff should not file motions to restrict or seal with this Court regarding such state court decisions.

2025CV004444 (Milwaukee Cnty. Cir. Ct. 2025), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CV004444&countyNo=40&index=0. As such, the Court will deny Plaintiff's motion to restrict. *See Fial v. Cozine*, No. 3:25-cv-01498-JR, 2025 WL 3897314, at *2 (D. Or. Dec. 15, 2025) (denying motion to restrict because the information for which the party sought protection was already public).[3]

**4. CONCLUSION**

Plaintiff may proceed on all five of her claims. Plaintiff's motion to restrict, ECF No. 3, will be denied. Plaintiff's next step in this matter is to serve her complaint together with a summons on FH and FMLH. *See generally* FED. R. CIV. PRO. 4. Plaintiff may either request service on FH and FMLH by the U.S. Marshals or obtain service on FH and FMLH on her own, using one of the methods described in Federal Rule of Civil Procedure 4(d)–(e).

If Plaintiff chooses to obtain service on FH and FMLH on her own, she may, if need be, file a request for the Clerk of the Court to issue service packets to her. Docket Annotation to ECF No. 1 (noting that a service packet was already issued). There is no cost for the Clerk of Court to issue service packets to Plaintiff. If Plaintiff hires a process server to serve FH and FMLH, she will be responsible for that cost.

[3]Moving forward, Plaintiff will carry the obligation to identify which documents she seeks to have sealed or restricted, rather than place the burden on the Court to find which documents meet the criteria she puts forth. *See Univ. Accounting Servs., LLC, v. Scholarchip Card, LLC*, No. 17-CV-901-JPS, 2017 WL 2982995, at *1 (E.D. Wis. July 17, 2017) ("It is not this Court's task to divine what portions of these documents Plaintiff believes to be worthy of secrecy." (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)).

Alternatively, "at the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." FED. R. CIV. P. 4(c)(3). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65.00 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Plaintiff must file a notice on or before **September 23, 2026**, indicating whether she will obtain service on FH and FMLH on her own or if she desires service by the U.S. Marshals Service.

Accordingly,

**IT IS ORDERED** that the Plaintiff Mercedes Calle shall file on or before **September 23, 2026**, a notice indicating which method of service she desires. Failure to timely file such notice will lead to dismissal of this action; and

**IT IS FURTHER ORDERED** that Plaintiff Mercedes Calle's motion to restrict, ECF No. 3, be and the same is hereby **DENIED**; the Clerk of Court is directed to remove the restrictions from ECF Nos. 3 and 3-1.

Dated at Milwaukee, Wisconsin, this 1st day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.